# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

LAWRENCE DAVID NIREN aka
THEODORE ROXFORD,

                                        Plaintiff,

vs.

MARCO ANTONIO HERNANDEZ
CERVANTES and MARIA SARA
CERVANTES CASTRO,

                                        Defendants.

CASE NO. 14-cv-2593-BEN (JLB)

**ORDER:**

**(1) GRANTING MOTION TO PROCEED** *IN FORMA PAUPERIS*

**(2) DISMISSING COMPLAINT**

[Docket No. 2]

Before this Court is a Motion to Proceed *In Forma Pauperis*, filed by Plaintiff Lawrence David Niren. (Docket No. 2). For the reasons stated below, the Motion is **GRANTED** and the action is **DISMISSED without prejudice.**

## BACKGROUND[1]

On October 31, 2014, Plaintiff filed a complaint alleging intentional infliction of emotional distress. (Docket No. 1). Plaintiff alleges that Defendants Marco Antonio Hernandez Cervantes and Maria Sara Cervantes Castro "knowingly and intentionally" caused Plaintiff and his family to suffer by Defendant's "lies, cruelty,

---

[1]The following background is drawn from the allegations of Mr. Niren's Complaint. The Court is not making any factual findings, but rather only summarizing the relevant facts alleged by Mr. Niren for purposes of evaluating his Motion to Proceed IFP.

14cv2593

and deceit." (Compl. ¶ 15).  Plaintiff contends Defendants made false statements against him, and knew that doing so would result in Plaintiff going to jail.  (Compl. ¶ 55).

Plaintiff frequently visits his ex-wife and son in Rosarito, Mexico.  (Compl. ¶¶ 2, 16).  During his visits, Plaintiff feeds his ex-wife's dog and any other stray dogs nearby.  (Compl. ¶ 2).  Sometime in April or May 2014, a stranger approached Plaintiff's ex-wife's house complaining that he was bitten by a dog that Plaintiff fed.  (Compl. ¶ 4).  The stranger was accompanied by Defendants, Marco Antonio Hernandez Cervantes and Maria Sara Cervantes Castro.  (Compl. ¶¶ 4, 24-25).  The stranger and Defendants threatened to call the police unless Plaintiff paid the stranger some money.  (Compl. ¶¶ 4, 6).  Plaintiff refused to pay any money, and eventually the three left.  (Compl. ¶¶ 8, 30).

The following day, the stranger and Defendants returned to Plaintiff's ex-wife's house with four men claiming to be policemen.  (Compl. ¶ 28).  When Plaintiff asked to see their identification, the four men refused.  (Compl. ¶ 29).  When the four men asked Plaintiff for his identification and passport, Plaintiff refused.  (Compl. ¶ 29).  Again, the group demanded Plaintiff pay the stranger some money, or they would have Plaintiff arrested.  (Compl. ¶ 30).  After a while, everyone parted ways.  (Compl. ¶ 31).

On October 4, 2014, Plaintiff was arrested in front of his ex-wife's house in Rosarito, Mexico.  (Compl. ¶¶ 9, 33).  Plaintiff was taken to a jail and then to a courthouse in Rosarito, where he was told of the charge against him.  (Compl. ¶ 10).  The stranger and Defendants alleged Plaintiff owned four pitbulls who attacked the stranger, and demanded compensation.  (Compl. ¶ 10).  Plaintiff alleges that the court told Plaintiff to either pay 40,000 pesos (3,100 U.S. dollars) or go to prison and admit that he was guilty.  (Compl. ¶¶ 11, 36).  "When [P]laintiff heard this from the [c]ourt, he was shocked and mortified . . . and he started to fear for his life . . . ."  (Compl. ¶ 37).

14cv2593

Plaintiff did not pay the fine, so he was taken to jail in Tijuana, Mexico. (Compl. ¶ 12). When the Court ordered the police to take Plaintiff to jail, Plaintiff felt "fear, grief, anger, horror, shame, nausea, humiliation and shock." (Compl. ¶¶ 41-42). According to Plaintiff, he vomited in the van on the way to jail. (Compl. ¶ 43). While in jail, Plaintiff claims that he was placed in a cell so crowded that he had to stand the whole night through. (Compl. ¶¶ 45-46). Plaintiff remained in jail—what he calls "a living hell"—for two weeks, until his ex-wife gathered enough money to pay the fine or bail amount. (Compl. ¶¶ 12-13). On October 17, 2014, Plaintiff was released. (Compl. ¶ 52). By the time Plaintiff was released, Plaintiff alleges he had already endured unbearable conditions, "which [P]laintiff is not ready to talk about." (Compl. ¶ 51).

On October 24, 2014, Plaintiff claims he went to court in Rosarito and discovered that an investigation revealed that Plaintiff "was going to be found innocent." (Compl. ¶ 54).

## DISCUSSION

## I. Motion to Proceed IFP

Under 28 U.S.C. § 1915(a)(1),

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor.

Plaintiff states that he is not employed and has not been employed since August 2011. (Mot. at 2). Plaintiff's only source of income comes from welfare benefits. (*Id.*) Plaintiff owns no real estate or vehicles, and has approximately sixteen dollars to his name. (*Id.* at 2-3). Plaintiff's Motion to Proceed *In Forma Pauperis* is therefore **GRANTED**.

///

///

14cv2593

## II. Merits of the Complaint

### (a) Legal Standard

Under section 1915(e) of title 28 of the United States Code, the Court must *sua sponte* dismiss *in forma pauperis* ("IFP") complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)). "[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners." *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001).

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not

1    "supply essential elements of claims that were not initially pled." *Ivey v. Board of*

2    *Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

3        (b) Choice of Law

4        The Court's subject matter jurisdiction over this case is based upon diversity

5    jurisdiction under 28 U.S.C. § 1332(a).[2]  Under *Erie R.R. Co. v. Tompkins*, 304 U.S.

6    64 (1938), a federal court sitting in diversity jurisdiction applies state substantive

7    law and federal procedural law.  "In a diversity case, a federal court must apply the

8    choice of law rules of the state in which the action was filed." *Sims Snowboards,*

9    *Inc. v. Kelly*, 863 F.2d 643, 645 (9th Cir. 1988).

10       California uses the "governmental interest approach" to determine which law

11   applies to the issue at hand. *Hurtado v. Superior Court*, 11 Cal. 3d 574, 579 (1974)

12   (citing *Reich v. Purcell*, 67 Cal. 2d 551 (1967)).  Under this approach, the forum

13   "must search to find the proper law to apply based upon the interests of the litigants

14   and the involved states." *Reich*, 67 Cal. 2d at 553.  "When one of two states related

15   to a case has a legitimate interest in the application of its law and policy and the

16   other has none, there is no real problem; clearly the law of the interested state

17   should be applied." *Hurtado*, 11 Cal. 3d at 580.

18       Here, Plaintiff claims he suffered emotional distress from actions that took

19   place in Mexico.  Defendants contacted Plaintiff at his usual place of abode during

20   his weekly visits to Mexico.  Plaintiff was arrested in Mexico weeks later.  Plaintiff

21   was brought before a judge in Mexico.  Finally, Plaintiff was ordered to serve time

22   in jail in Tijuana, Mexico.  Any and all the harm Plaintiff suffered were a result of

23   conduct that occurred in Mexico.  This case has no connection to California except

24   that Plaintiff chose this as the forum.  Thus, California has no legitimate interest in

25   applying its laws to this action. *See Hernandez v. Burger*, 102 Cal. App. 3d 795,

26   799 (4th Dist. 1980) (finding that application of Mexican law was appropriate

27

28       [2]Plaintiff indicates that Defendants are citizens of Mexico and demands
     compensatory damages in the amount of $100,000. (Compl. ¶ 22).

14cv2593

1    where plaintiff was a resident of Mexico, the car accident occurred in Mexico, and

2    the only connection to California was that defendants were residents of California

3    and it was the chosen forum).

4         This Court therefore finds the laws of Mexico should necessarily and

5    appropriately be applied to Plaintiff's case.

6         (c)  Intentional Infliction of Emotional Distress Claim

7         The Court finds Plaintiff's Complaint requires *sua sponte* dismissal pursuant

8    to 28 U.S.C. § 1915(e)(2)(B)(ii) to the extent it seeks relief under a claim of

9    intentional infliction of emotional distress against Defendants.  Mexico does not

10   have a cause of action for intentional infliction of emotional distress. *See generally*,

11   Código Civil Federal [CC] [Federal Civil Code] arts. 1910-34, *as amended*, Diario

12   Oficial de la Federación [DO], 1950 (Mex.); Jorge A. Vargas, *Mexican Law &*

13   *Personal Injury Cases*, in Mexican Law for the American Lawyer 379-426 (2009).

14   Plaintiff has not presented any evidence that it does, nor does he state any facts that

15   might support a similar claim under Mexican law.  Plaintiff's Complaint is deficient

16   in that it fails to state a claim upon which relief can be granted.  Thus, the

17   Complaint is **DISMISSED without prejudice.**

18                        **CONCLUSION**

19        Plaintiff's Motion to Proceed *In Forma Pauperis* is **GRANTED**.  The Court

20   *sua sponte* **DISMISSES** the action without prejudice and with leave to amend.

21   Plaintiff may file an Amended Complaint within **thirty days** of the date this Order

22   is filed.  The Amended Complaint must cure the deficiencies discussed above.  The

23   Clerk may close the case.

24        **IT IS SO ORDERED.**

25

26   DATED: January ⁄5, 2015

27                                        HON. ROGER T. BENITEZ
                                          United States District Judge
28

- 6 -                                                    14cv2593