FILED

2015 AUG 13 AM 11:32

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE DAVID NIREN aka THEODORE ROXFORD,<br><br>Plaintiff,<br><br>vs.<br><br>MARCO ANTONIO HERNANDEZ CERVANTES and MARIA SARA CERVANTES CASTRO,<br><br>Defendants. | CASE NO. 14-cv-2593-BEN (JLB)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH PREJUDICE**<br><br>[Docket No. 5] |

Before this Court is Plaintiff Lawrence Niren's First Amended Complaint. (Docket No. 5.) For the reasons stated below, the action is **DISMISSED with prejudice**.

## BACKGROUND

### I. Factual Background[1]

Between August 2011 and October 2014, Plaintiff went to Rosarito, Mexico every week to visit his two-year-old son and his son's mother. (FAC ¶ 3.) During those visits he witnessed the Defendants, Marco Antonio Hernandez Cervantes and Maria Sara Cervantes Castro, abuse stray dogs. (FAC ¶¶ 3-4.) As an animal lover, Plaintiff spoke against the Defendants' mistreatment of the dogs, and also acted to

---

[1] The following background is drawn from the allegations of Mr. Niren's First Amended Complaint. The Court is not making any factual findings, but rather only summarizing the relevant facts alleged by Mr. Niren for screening purposes.

protect, feed, and care for the stray dogs. (FAC ¶¶ 4.) Plaintiff's son's mother has a dog that is a German Shepherd mix. (FAC ¶ 6.)

On May 16, 2014, Plaintiff was at his son's house in Rosarito when Defendants, accompanied by a man, knocked at the gate. (FAC ¶ 5.) The man complained that he had been bitten by one of Plaintiff's dogs, a pitbull, and demanded money. (FAC ¶ 5.) That man acknowledged that it was not Plaintiff's German Shepherd that had bitten him. (FAC ¶ 7.) But, Defendants, knowing that Plaintiff did not own a pitbull, insisted that because Plaintiff cared for and fed stray dogs, Plaintiff was responsible for them. (FAC ¶¶ 8, 30, 33.) The man agreed and demanded that Plaintiff pay him money, or else the man and Defendants threatened to have Plaintiff arrested. (FAC ¶ 8.) Plaintiff refused to pay any money and told Defendants and the man to leave. (FAC ¶ 8.)

The following day, Defendants and the man returned with four men who claimed to be police. (FAC ¶ 9.) The men would not show Plaintiff their identification. (FAC ¶ 9.) The Defendants, the man, and the four others demanded money and threatened to return with an arrest warrant if Plaintiff refused to pay. (FAC ¶ 9.) Plaintiff did not open the gate. (FAC ¶ 9.) After about an hour, everyone left. (FAC ¶ 9.) Between May 17 and 20, 2014, Defendants and the man reported to the police and the Rosarito District Attorney that Plaintiff owned pitbulls that bit the man. (FAC ¶ 34.)

On October 4, 2014, Plaintiff was holding his son in the front yard in Rosarito when a van stopped in front of the house. (FAC ¶ 10.) Two men got out and handcuffed Plaintiff to the van door. (FAC ¶ 10.) The men emptied Plaintiff's pockets and handed all of his belongings and his son over to the son's mother. (FAC ¶ 11.) A friend, Frederico, pulled up to the house in time to see Plaintiff being arrested and taken away. (FAC ¶ 11.)

Plaintiff was taken to a criminal court in Rosarito where he was told that Defendants and the man had testified that the man was attacked by Plaintiff's four

pitbulls. (FAC ¶ 12.) The Court instructed Plaintiff to admit his guilt and pay a fine of 40,000 pesos (approximately $3,100) or be taken to jail. (FAC ¶ 12.) Plaintiff did not pay the fine and was taken to jail. (FAC ¶¶ 13-14.) Plaintiff was driven in a police van to prison in Tijuana. (FAC ¶ 54.) During the ride, Plaintiff vomited as he suffered tremendous grief, fear, and shock. (FAC ¶ 55.)

Upon arrival, Plaintiff was booked and processed. (FAC ¶ 56-57.) Plaintiff remained in the Tijuana prison for two weeks until his son's mother paid the bail money. (FAC ¶ 62.)

**II. Procedural Background**

On October 31, 2014, Plaintiff filed a complaint alleging intentional infliction of emotional distress, along with a Motion to Proceed *In Forma Pauperis*. (Docket No. 1.) On January 16, 2015, this Court granted Plaintiff leave to proceed *in forma pauperis*, concluded that Mexican law applies to the case, and dismissed the complaint without prejudice and with leave to amend. (Docket No. 4.) On January 28, 2015, Plaintiff filed a First Amended Complaint alleging fraud, illicit acts, and moral damages under the Mexican Civil Code. (Docket No. 5.)

## LEGAL STANDARD

Where a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Section 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1988)

Under Rule 12(b)(6), a court may dismiss a complaint if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the

matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). While a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Finally, "[i]n determining foreign law, the court may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1.

## DISCUSSION

Plaintiff argues that Defendants violated the Mexican Civil Code[2] when they told the man, the police, the district attorney, and the court that Plaintiff owned pitbulls. Plaintiff contends that Defendants made a false statement, knowing it was

---

[2] Plaintiff raises claims under Mexico's Federal Civil Code. Although the state code in Baja California might be more applicable, the Court will address Plaintiff's claims as he has raised them. *See* Jorge A. Vargas, *Mexican Law for the American Lawyer* 402, 421 (2009) ("[T]he civil codes of each of Mexico's [thirty-one] states are almost verbatim reproductions of the Federal Civil Code . . . .").

<3>

false. Plaintiff raises the following three claims for relief: (1) willful misrepresentation and fraud; (2) illicit acts; and (3) moral damages.

## I. Willful Misrepresentation & Fraud (Claim 1)

Article 2106 states, "Liability resulting from fraud can be claimed in regards to any obligation. Waiver of such claim is null and void." Código Civil Federal [CC] [Federal Civil Code] art. 2106 (Mex.).

Plaintiff failed to state a claim for fraud because he did not have a contractual agreement with Defendants. In Mexico, liability resulting from tortious acts is defined as "extra-contractual liability," and is regulated by Articles 1910-1934. Jorge A. Vargas, *Tort Law in Mexico* in 2 Mexican Law: A Treatise for Legal Practitioners and International Investors § 21.2 (1998); Jorge A. Vargas, *Mexican Law & Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners & Judges*, 8 San Diego Int'l L.J. 475, 485 (2007). Thus, Plaintiff would only be entitled to relief under article 2106 if he and Defendants had an obligation to each other arising from a contract. *See* CC, art. 1792 (noting obligations are created by agreement). Plaintiff does not contend that the Parties had an agreement or contract of any kind. Claim 1 is therefore **DISMISSED**.

## II. Illicit Acts (Claim 2)

Article 1910 states, "Whoever, by acting illicitly or against the good customs and habits, causes damage to another shall be obligated to compensate him, unless he can prove that the damage was caused as a result of the fault or inexcusable negligence of the victim." CC, art. 1910. The trier of fact has considerable discretion when determining what constitutes an illicit act. *See Curley v. AMR Corp.*, 153 F.3d 5, 14 (2d Cir. 1998) (citing Boris Kozolchyk & Martin L. Ziontz, *A Negligence Action in Mexico: An Introduction to the Application of Mexican Law in the United States*, 7 Ariz. J. Int'l & Comp. L. 1, 11 (1989)); *see also* Jorge A. Vargas, *Moral Damages Under the Civil Law of Mexico. Are These Damages Equivalent to U.S. Punitive Damages?*, 35 U. Miami Inter-Am. L. Rev. 183, 191

- 5 -

14cv2593

(2004).

Here, Plaintiff alleges that Defendants acted illicitly and against good customs when they lied to police and told police that Plaintiff owned four pitbulls that attacked the man. He claims that "[a]s a direct result of defendants' acts and lies to the police and district attorney, a file was opened up against plaintiff that they slowly but surely put together in order use against plaintiff . . . ." (FAC ¶ 35.) Assuming *arguendo* that Defendants acted illicitly, Defendants were not the direct cause of Plaintiff's harm. Rather, it was the separate and distinct decision of the police to make an arrest, the district attorney to prosecute, and the court to find Plaintiff guilty. As such, any pain and suffering Plaintiff may have suffered was not directly caused by Defendants. Plaintiff failed to state an illicit acts claim, and Claim 2 is therefore **DISMISSED**.

### III. Moral Damages (Claim 3)

Article 1916 provides for the recovery of moral damages. It states:

> Non-physical and defamatory injuries to a person include those which impact on feelings, affections, beliefs, honor, decorum, reputation, privacy, image and physical appearance, or how he is perceived in the opinion of others. Non-physical injuries shall be presumed if a person's freedom or his physical or psychological integrity is unlawfully violated or restricted.

CC, art. 1916. However, "[t]here shall be no liability for the commission of a non-physical injury if it is done in the exercise of the free expression of opinion, critique and reporting[.]" CC, art. 1916 Bis. A plaintiff seeking moral damages has the burden to prove that the defendant acted illicitly and that the defendant's illicit acts were the direct cause of plaintiff's non-physical injury. *Id.*

As stated above, Plaintiff cannot prove that Defendants were the direct cause of Plaintiff's suffering. If the police did not arrest Plaintiff and if the court did not send Plaintiff to prison, Plaintiff would not have suffered harm. Plaintiff therefore cannot show he is entitled to moral damages from Defendants. Claim 3 is therefore **DISMISSED**.

## CONCLUSION

Plaintiff has failed to state a plausible claim for relief. Further, based upon the facts alleged, the Court is not aware of any claim that might entitle Plaintiff to relief. The Court therefore *sua sponte* **DISMISSES** the action with prejudice. *Cf. Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309 (1918) ("[T]he courts of one independent government will not sit in judgment on the validity of the acts of another done within its own territory."). The Clerk may close the case.

**IT IS SO ORDERED**.

DATED: August 2, 2015

HON. ROGER T. BENITEZ
United States District Judge